IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
ODESSA / MIDLAND DIVISION

| | |
|---|---|
| SAMUEL FUENTES, JAIME FUENTES and PEDRO FUENTES, on behalf of themselves and other persons similarly situated, known and unknown<br><br>Plaintiffs,<br><br>v.<br><br>TOP-NOTCH LOGISTIC SOLUTIONS LLC, CHARLES CLEMENTS, individually, and JESSE MELTON, individually<br><br>Defendants. | Case No. 7:19-cv-00108<br><br>Judge |

**COLLECTIVE ACTION COMPLAINT**

Through their attorneys, Plaintiffs Samuel Fuentes, Jaime Fuentes, and Pedro Fuentes (collectively "Plaintiffs"), on behalf of themselves and all other persons similarly situated, known and unknown, file this Collective Action Complaint against Defendants Top-Notch Logistic Solutions LLC ("Top-Notch Logistic Solutions"), Charles Clements ("Clements"), and Jesse Melton ("Melton") (collectively "Defendants").[1] Plaintiffs allege as follows:

**NATURE OF PLAINTIFFS' CLAIMS**

1. This is an action for owed overtime wages against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. Defendant Top-Notch Logistic Solutions is an oilfield service provider that coordinates sand deliveries to fracking sites.

---

[1] Before filing this lawsuit, Plaintiffs' counsel sent a letter to Defendants to notify them of Plaintiffs' claims and to invite pre-litigation settlement discussions. To date, Defendants have not responded to this letter.

3. Defendants Clements and Melton are owners and officers of Defendant Top-Notch Logistic Solutions who are responsible for overseeing the company's day-to-day operations.

4. Plaintiffs previously worked for Defendants as Sand Coordinators.

5. As Sand Coordinators, Plaintiffs coordinated sand deliveries to fracking sites operated by Halliburton in this judicial district.

6. Plaintiffs regularly worked over forty (40) hours per week.

7. From approximately January 2018 to July 2018, Defendants classified Plaintiffs and other Sand Coordinators as independent contractors.

8. Defendants paid Plaintiffs straight-time hourly rates of pay for all of their hours worked, including for overtime hours over forty (40) in individual workweeks.

9. Under the FLSA, Plaintiffs and other Sand Coordinators were employees of Defendants and were entitled to overtime wages.

10. Defendants violated the overtime provisions of the FLSA by failing to pay Plaintiffs and other Sand Coordinators overtime pay.

11. Plaintiffs bring this lawsuit as a collective action under the FLSA. Copies of Plaintiffs' consent forms are attached as Exhibit A to this Collective Action Complaint.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims, which arise under 29 U.S.C. § 216(b), based on 28 U.S.C. § 1331.

13. Venue is proper in this judicial district because Plaintiffs worked in this judicial district and thus a substantial portion of the events giving rise to this action took place here.

**THE PARTIES**

14. Plaintiff Samuel Fuentes is an individual that resides in Odessa, Texas.

15. Plaintiff Jaime Fuentes is an individual that resides in Garland, Texas.

16. Plaintiff Pedro Fuentes is an individual that resides in Edinburg, Texas.

17. Defendant Top-Notch Logistic Solutions is a Texas limited liability company.

18. Defendant Top-Notch Logistic Solutions' principal place of business is in Sherman, Texas.

19. Defendant Clements is an owner, officer, and registered agent of Defendant Top-Notch Logistic Solutions.

20. Defendant Clements is involved in the day-to-day operations of Defendant Top-Notch Logistic Solutions.

21. On behalf of Defendant Top-Notch Logistic Solutions, Defendant Clements exercises authority over hiring, firing, and scheduling of employees.

22. On behalf of Defendant Top-Notch Logistic Solutions, Defendant Clements exercises authority over how employees are paid.

23. Defendant Melton is an executive of Defendant Top-Notch Logistic Solutions.

24. Defendant Melton is involved in the day-to-day operations of Defendant Top-Notch Logistic Solutions.

25. On behalf of Defendant Top-Notch Logistic Solutions, Defendant Melton exercises authority over hiring, firing, and scheduling of employees.

26. On behalf of Defendant Top-Notch Logistic Solutions, Defendant Melton exercises authority over how employees are paid.

27. Defendants Clements and Melton decided to classify Sand Coordinators as independent contractors from approximately January 2018 until July 2018.

28. Defendants Clements and Melton decided to reclassify most Sand Coordinators as employees and begin paying them overtime in approximately July 2018.

**FACTUAL ALLEGATIONS**

29. Plaintiff Samuel Fuentes worked as a Sand Coordinator for Defendants from approximately January 2018 to June or July 2018 and then again from approximately mid-August 2018 to October 2018.

30. Defendants paid Plaintiff Samuel Fuentes $24.00 per hour to work as a Sand Coordinator.

31. Even after Defendants reclassified Sand Coordinators as employees and began paying overtime, Defendants still classified Plaintiff Samuel Fuentes as an independent contractor and did not pay him overtime.

32. Plaintiff Samuel Fuentes typically worked at least twelve hours per day, seven days per week for Defendants.

33. Plaintiff Jaime Fuentes worked for Defendants as a Sand Coordinator from approximately February 2018 to July 2018.

34. Plaintiff Jaime Fuentes' typical work schedule was fourteen days on and seven days off.

35. When he was working, Plaintiff Jaime Fuentes typically worked at least twelve hours a day, seven days a week for Defendants.

36. For approximately the first month of his employment, Defendants paid Plaintiff Jaime Fuentes $20.00 per hour to work as a Sand Coordinator.

37. For the rest of his employment, Defendants paid Plaintiff Jaime Fuentes $22.00 per hour to work as a Sand Coordinator.

38. Plaintiff Pedro Fuentes worked for Defendants as a Sand Coordinator from approximately April 2018 to October 2018.

39. Plaintiff Pedro Fuentes' typical work schedule was fourteen days on and seven days off.

40. When he was working, Plaintiff Pedro Fuentes typically worked at least twelve-and-a-half hours a day, seven days a week for Defendants.

41. Until approximately July 2018, Defendants paid Plaintiff Pedro Fuentes $21.00 per hour to work as a Sand Coordinator.

42. Starting in approximately July 2018, when Defendants reclassified most Sand Coordinators as employees and started paying overtime, Defendants paid Plaintiff Pedro Fuentes $11.00 for straight time hours and $16.50 per hour for overtime hours to work as a Sand Coordinator.

43. From approximately January 2018 to July 2018, Defendants classified Plaintiffs and other Sand Coordinators as "independent contractors."

44. In approximately July 2018, Defendants reclassified Plaintiff Pedro Fuentes and most of their other Sand Coordinators as "employees" and began paying them overtime wages.

45. Plaintiffs and Defendants' other Sand Coordinators performed the same job duties before and after the reclassification; the only thing that changed was how they were paid.

46. Defendants exercised control over Plaintiffs and their other Sand Coordinators by assigning them to job sites, assigning the hours they were required to work, and specifying how they were to perform their jobs.

47. Plaintiffs and Defendants' Sand Coordinators were not required to make any investments to perform their work. If Sand Coordinators did not possess safety equipment, Defendants provided that equipment. All that Plaintiffs and other Sand Coordinators were required to provide was their time.

48. By contrast, Defendants invested in acquiring contracts with fracking companies, obtaining insurance, and providing management and financial structures that allowed Top-Notch Logistic Solutions to operate.

49. While classifying them as independent contractors, Defendants paid Plaintiffs and other Sand Coordinators a fixed hourly rate of pay.

50. Plaintiffs and Defendants' Sand Coordinators could not sub-contract their work.

51. As a result, Plaintiffs and Defendants' other Sand Coordinators had no opportunity for profit and loss independent of the opportunities Top-Notch Logistic Solutions provided.

52. Sand Coordinator work is not skilled labor. Plaintiffs and Defendants' other Sand Coordinators did not need special education, certificates, or extensive work experience to perform their jobs.

53. Defendants hired Plaintiffs and other Sand Coordinators to work for an open-ended duration, not for a job or discrete time period.

**COUNT I**
**Violation of the Fair Labor Standards Act – Overtime Wages**
**(Collective Action)**

54. Plaintiffs incorporate the previous allegations in this Collective Action Complaint as if alleged here.

55. This count arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for failing to pay overtime pay to Plaintiffs and similarly situated Sand Coordinators for all time worked in excess of forty (40) hours in one or more individual workweeks.

56. In one or more individual workweeks, Plaintiffs and other Sand Coordinators worked in excess of forty (40) hours per week.

57. Pursuant to 29 U.S.C. § 207, Plaintiffs and other Sand Coordinators were entitled to be compensated at a rate of one and one-half times their regular rates of pay for all time worked in excess of forty (40) hours in individual workweeks.

58. In one or more individual workweeks, Defendants did not pay Plaintiffs and other Sand Coordinators one and one-half times their regular rates of pay for the time they worked in excess of forty (40) hours in individual workweeks.

59. In 2018, Defendant Top-Notch Logistic Solutions has had more than $500,000 in sales made or business done.

60. Defendant Top-Notch Logistic Solutions is an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

61. Defendant Top-Notch Logistic Solutions was Plaintiffs' "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d).

62. Defendant Clements was Plaintiffs' "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d).

63. Defendant Melton was Plaintiffs' "employer" as that term is defined by the FLSA, 29 U.S.C. § 203(d).

64. Plaintiffs were Defendant Top-Notch Logistic Solutions' "employee[s]," as defined by Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

65. Plaintiffs were Defendant Clements' "employee[s]," as defined by Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

66. Plaintiffs were Defendant Melton's "employee[s]," as defined by Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

67. Defendants' failure to pay overtime pay to Plaintiffs and similarly situated Sand Coordinators in one or more individual workweeks for the time they worked in excess of forty (40) hours per week violated the FLSA, 29 U.S.C. § 207.

68. Defendants willfully violated the FLSA by failing to pay Plaintiffs and similarly situated Sand Coordinators overtime pay for all time worked in excess of forty (40) hours per week.

WHEREFORE, Plaintiffs pray for a judgment against Defendants as follows:

A. A judgment in the amount of one and one-half times Plaintiffs' and similarly situated employees' regular rates of pay for all time they worked in excess of forty (40) hours per week;

B. Liquidated damages in an amount equal to the amount of unpaid overtime compensation found to be due;

C. Reasonable attorneys' fees;

D. Costs incurred in filing this action; and

E. Such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

Dated: April 24, 2019

/s/Zachary C. Flowerree
Zachary C. Flowerree – zflowerree@flsalaw.com
Texas Bar No. 24109238
Douglas M. Werman - dwerman@flsalaw.com
Illinois Bar No. 6204740
(*Pro Hac Vice forthcoming*)
Werman Salas P.C.
77 W. Washington, Suite 1402
Chicago, Il 60602
(312) 419-1008

Attorneys for Plaintiffs